WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mohammed Al-Sammak,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Higher Ground A Resource Center,<br><br>　　　　Defendant. | No. CV-24-00502-TUC-JCH (MSA)<br>(Lead Case)<br><br>Consolidated with:<br>No. CV-24-00538-TUC-JCH (MSA)<br><br>**REPORT AND RECOMMENDATION** |

In these consolidated cases, Plaintiff Mohammed Al-Sammak claims that Defendant Higher Ground A Resource Center discriminated against him based on his Iraqi national origin and Muslim faith. Before the Court are Plaintiff's motion to remand and Defendant's partial motions to dismiss. As discussed below, the Court will recommend that Plaintiff's motion be denied, and that Defendant's motions be granted.

**Motion to Remand**

In July 2024, Plaintiff filed a complaint against Defendant in Arizona superior court, alleging several state-law claims and a single federal-law claim of retaliation in violation of Title VII of the Civil Rights Act. (Doc. 1-3 (CC).)[1] In November 2024, Defendant removed the case to this Court on the ground that it has original subject-matter jurisdiction over that federal-law claim. (Doc. 1 (CC).) Plaintiff now moves for a remand, arguing that his reference to Title VII was accidental and that the Court lacks jurisdiction once the reference is disregarded. He also argues that Defendant's notice of removal is defective

---

[1] In this report, citations to the lead case are indicated with "LC." Citations to the consolidated case are indicated with "CC."

since it is not accompanied by a state-court order of dismissal.

These arguments are not persuasive. Removal based on federal-question jurisdiction is proper whenever "a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). There is a federal retaliation claim presented on the face of Plaintiff's complaint, so removal was proper. It does not matter that the claim was included accidentally. *Huffman v. Lindgren*, 81 F.4th 1016, 1019–20 (9th Cir. 2023) (finding removal proper based on the complaint's inclusion of federal-law claims, despite the plaintiff's assertion "that he never intended to include a federal claim"). And there is no requirement that a removing defendant obtain a state-court order of dismissal before initiating a removal. *See* 28 U.S.C. § 1446.

Therefore, the Court will recommend that Plaintiff's motion to remand be denied.

## Motions to Dismiss

Defendant moves to dismiss several of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). The Court finds that the motions should be granted.

### I.     Legal Standard

A defendant may move for dismissal of a complaint on the ground that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard does not impose a "probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough. *Twombly*, 550 U.S. at 555.

### II.    Factual Allegations[2]

Defendant is a private organization that works with local schools to connect students and their families to public services. (*See* Doc. 11-1 at 13–14, 17–19 (LC).) In July 2022,

---
[2] The factual allegations in the lead and consolidated cases are substantively identical. For convenience, only the lead case is cited in this section.

- 2 -

Defendant hired Plaintiff as a Site Director and assigned him to work at Doolen Middle School in Tucson, Arizona. (Doc. 11 at 7–8 (LC).) Plaintiff's employment was terminated in January 2023. (*Id.* at 7.) Plaintiff alleges that, throughout his employment, he was treated differently than other employees based on his Iraqi national origin and Muslim faith. (*Id.*)

The first incident occurred in August 2022, during a meeting with Defendant's Chief of Staff, Barbara Azarias. (*Id.*) Azarias told Plaintiff that although "Site Director" was a supervisor's title, Plaintiff lacked supervisory authority and was just another member of the team. (*Id.*) Other Site Directors, who were neither Iraqi nor Muslim, were not told that they lacked supervisory authority. (*Id.*) The second incident occurred sometime thereafter. Azarias told Plaintiff to carpool with a female coworker to a meeting, but Plaintiff rode his bike instead. (*Id.* at 7, 11.) Azarias inquired as to the reason Plaintiff rode his bike, asking if "it was against [his] religion and culture to ride in the car with [a] woman." (*Id.* at 7.) Plaintiff was "appalled" at Azarias's question. (*Id.* at 10.) The third incident occurred in November 2022. (*Id.* at 7.) Plaintiff originally reported to the Chief Community Officer, but Azarias changed his job description so that he reported to the Director of Quality, Tiffany Emerson. (*Id.* at 7–8.) Plaintiff was the only employee whose job description was changed. (*Id.* at 8.)

The last incidents occurred on January 25, 2023. In a group work chat, Azarias and others discussed whether a certain employee, who was a veteran of the Iraq War, should train Plaintiff on "collaboration, clear communication, and other conduct related things." (Doc. 11-1 at 2 (LC).) Azarias wrote that Plaintiff had told the other employee that Plaintiff "forgives him for being in Iraq during war . . . so maybe not a good fit." (*Id.*) Later that day, Emerson canceled a student field trip that Plaintiff had organized. (*Id.*) Plaintiff had completed all tasks required for the trip to proceed, but Emerson added new requirements at the last minute and then canceled the trip when Plaintiff could not satisfy them. (Doc. 11 at 9–10, 12 (LC).)

After the trip was canceled, Plaintiff told Emerson that he had "serious concerns" he was being treated differently. (*Id.* at 8.) Emerson dismissed Plaintiff's concerns and

stated that she and Azarias had decided to send Plaintiff home early. (*Id.*) Plaintiff was not allowed to return to work, and his employment was terminated on January 31. (*Id.*)

**III.  Discussion**

    **A.  Lead Case**

Plaintiff asserts the following claims: (1) national origin discrimination in violation of Title VII of the Civil Rights Act, (2) religious discrimination in violation of Title VII, (3) retaliation in violation of Title VII, (4) retaliation in violation of the Civil Rights of Institutionalized Persons Act, (5) national origin discrimination under Title VI of the Civil Rights Act, (6) retaliation in violation of the Americans with Disabilities Act, (7) retaliation in violation of the Fair Labor Standards Act, and (8) intentional infliction of emotional distress. Defendant moves to dismiss the fourth, fifth, sixth, seventh, and eighth claims. Each is addressed in turn.

**Civil Rights of Institutionalized Persons Act:** This Act prohibits states from subjecting incarcerated persons "to egregious or flagrant conditions which deprive such persons of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . ." 42 U.S.C. § 1997a(a). It also prohibits states from retaliating against any person who reports such conditions. *Id.* § 1997d. Plaintiff fails to state a claim under this law because he does not allege that Defendant subjected anyone to egregious or flagrant conditions of confinement, or that Defendant retaliated against him for reporting such conditions.

**Title VI:** Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Plaintiff fails to state a claim under this law because he does not allege that Defendant receives federal financial assistance. *See Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994) (listing the elements of a Title VI claim), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001) (en banc).

**Americans with Disabilities Act:** This Act forbids disability discrimination in employment and public services. 42 U.S.C. §§ 12112(a), 12132. It also forbids retaliation against any person who opposes such discrimination. *Id.* § 12203(a). Plaintiff fails to state a claim under this law because he does not allege that Defendant discriminated against anyone based on disability, or that Defendant retaliated against him for opposing such discrimination.

**Fair Labor Standards Act:** This Act requires that employers pay their employees a minimum wage and overtime wage. 29 U.S.C. §§ 206, 207. It also forbids retaliation against any employee who initiates a proceeding under its provisions or who "has testified or is about to testify in any such proceeding." *Id.* § 215(a)(3). Plaintiff fails to state a claim under this law because he does not allege that Defendant violated it, or that Defendant retaliated against him for filing a complaint or testifying about a violation.

**Intentional Infliction of Emotional Distress:**[3] Under Arizona law, this claim has three elements: (1) "extreme and outrageous conduct by the defendant"; (2) "defendant's intent to cause emotional distress or reckless disregard of the near certainty that such distress will result from defendant's conduct"; and (3) "resulting severe emotional distress." *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 909 P.2d 486, 495 (Ariz. Ct. App. 1995) (citing *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987)). At issue here are the first and second elements.

As to the first element, the trial court must decide "whether the acts at issue are sufficiently outrageous to state a claim for relief." *Johnson v. McDonald*, 3 P.3d 1075, 1080 (Ariz. Ct. App. 1999). The acts must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Patton v. First Fed. Sav. & Loan Ass'n of Phx.*, 578 P.2d 152, 155 (Ariz. 1978) (quoting *Cluff v. Farmers Ins.*, 460 P.2d 666, 668

---

[3] Plaintiff purports to bring this claim under "Restatement (Second) of Torts §§ 46," but the Restatement is not a source of substantive law in Arizona. *Powers v. Taser Int'l, Inc.*, 174 P.3d 777, 782 (Ariz. Ct. App. 2007). Because Arizona's common-law claim for "intentional infliction of emotional distress" is modeled after § 46, *Watts v. Golden Age Nursing Home*, 619 P.2d 1032, 1035 (Ariz. 1980), Plaintiff's claim is construed as a common-law claim.

(Ariz. Ct. App. 1969)). "Such conduct 'must completely violate human dignity' and 'strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.' It does not include 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Christakis v. Deitsch*, 478 P.3d 241, 245 (Ariz. Ct. App. 2020) (first quoting *Pankratz v. Willis*, 744 P.2d 1182, 1189 (Ariz. Ct. App. 1987); and then quoting *Duhammel v. Star*, 653 P.2d 15, 18 (Ariz. Ct. App. 1982)).

The conduct alleged in this case is not sufficiently outrageous. "[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d. Cir. 1988)). Plaintiff alleges that Azarias told him that he had no supervisory authority despite having a supervisor's title; that Azarias changed his job description; that Emerson canceled his event without good reason; and that Defendant fired him. These types of acts are common in the employment context, so they do not go beyond all possible bounds of decency—even when they are motivated by an improper purpose. *See id.* (holding that a failure to promote was not sufficiently outrageous, "even if it was motivated by sex discrimination or retaliation"); *Wallace*, 909 P.2d at 495 (holding that nonrenewal of an employment contract, change of employment duties, and reduction of salary were not sufficiently outrageous).

Plaintiff further alleges that Azarias made two discriminatory statements. Neither is sufficiently outrageous. Azarias asked whether Plaintiff's culture and religion prohibited him from riding in a car with a woman. (Doc. 11 at 10–11 (LC).) This question might have been intrusive and insensitive, but it cannot reasonably be described as "utterly intolerable in a civilized community." *Patton*, 578 P.2d at 155 (quoting *Cluff*, 460 P.2d at 668). It was asked in the context of Plaintiff's job, i.e., Azarias was attempting to learn the reason that Plaintiff, an employee, had not followed a job-related instruction. The question is a far cry from the type of bigoted remarks that can support an intentional-infliction claim. *See, e.g.*, *Bakhit v. Safety Markings, Inc.*, 33 F. Supp. 3d 99, 104–05 (D. Conn. 2014) (holding, under

the same outrageous-conduct standard, that the plaintiffs stated a claim based on their coworkers' frequent use of slurs such as "nigger," "camel jockey," "terrorist," and "spic"); *Burnett v. Am. Fed'n of Gov't Emps.*, 102 F. Supp. 3d 183, 191 (D.D.C. 2015) (holding, under the same standard, that the plaintiff stated a claim based on the defendant's "pattern of racist and discriminatory comments").

Azarias also stated that Plaintiff and another employee were "maybe not a good fit" to work together because Plaintiff had stated that he "forgives" the other employee for his military service in Iraq. (Doc. 11-1 at 2 (LC).) In the employment context, it is common for employers to consider their employees' abilities to work with others, and to keep apart employees who do not work well together. Azarias's message shows that she was merely concerned that, given their prior interaction, Plaintiff and the other employee would not work well together. That is not outrageous. *See Mintz*, 905 P.2d at 563 ("[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." (quoting *Cox*, 861 F.2d at 395)).

As to the second element, Plaintiff must allege facts indicating that Defendant either intended to cause him emotional distress or acted with reckless disregard of the "near certainty" that he would suffer emotional distress. *Wallace*, 909 P.2d at 495 (citing *Ford*, 734 P.2d at 585). The Court agrees with Defendant that Plaintiff has failed to plead this element. The complaint indicates that Azarias's intent in asking Plaintiff about his religion and culture was to find out why he had not followed her instruction. The context does not suggest that she intended to cause Plaintiff emotional distress, or that she disregarded the near certainty that her question would cause such distress. As to the chat message, an exhibit to the complaint indicates that the comment was not directed at Plaintiff, so it cannot be inferred that Azarias intended to cause Plaintiff emotional distress. Further, because the comment concerned a legitimate employment interest—team dynamics—it cannot be said that Azarias should have known that there was a near certainty that the comment would cause Plaintiff emotional distress.

Plaintiff's response to all of this is to repeat his allegations and to submit evidence showing that he suffered emotional distress. However, as just explained, his allegations do not clear the high bar for outrageous conduct. Nor do they plausibly allege intent. The allegations and exhibits do plausibly allege the third element—severe emotional distress—but that is not enough to save his claim. He must adequately plead *all* elements. *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 419 (9th Cir. 2020) ("Because the complaint fails to plead scienter, we have no occasion to address defendants' other arguments as to why the complaint may fail to plead other necessary elements."). He has not done so here.

### B.   Consolidated Case

Plaintiff asserts the following claims: (1) retaliation in violation of Title VII, (2) national origin discrimination in violation of the Arizona Civil Rights Act (ACRA), (3) religious discrimination in violation of ACRA, (4) retaliation in violation of ACRA, (5) wrongful termination in violation of the Arizona Employment Protection Act (AEPA), (6) constructive discharge in violation of AEPA, (7) intentional infliction of emotional distress, and (8) "Torts §46." Defendant moves to dismiss the seventh and eighth claims.

Presumably, "Torts §46" is a reference to § 46 of the Restatement (Second) of Torts. As explained earlier, the Restatement does not create substantive law. Because Arizona's common-law claim for intentional infliction of emotional distress uses § 46's standard, Plaintiff's complaint is construed as alleging a single common-law claim. As to whether Plaintiff has stated a claim under that theory, the allegations and arguments are the same as those in the lead case. So, for the reasons stated above, Plaintiff fails to state a claim.

## IV.   Conclusion

The Court finds that Defendant's motions to dismiss should be granted. In the lead case, the following claims should be dismissed: retaliation in violation of the Civil Rights of Institutionalized Persons Act, national origin discrimination under Title VI, retaliation in violation of the Americans with Disabilities Act, retaliation in violation of the Fair Labor Standards Act, and intentional infliction of emotional distress. In the consolidated case, the claim of intentional infliction of emotional distress should be dismissed.

As a housekeeping matter, the Court also finds that the Title VII claim in the consolidated case should be dismissed because it is duplicative of one of the claims in the lead case. "It is well established that a district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims." *M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012) (citing *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688–89 (9th Cir. 2007)). The Title VII retaliation claim in the consolidated case is identical to the one alleged in the lead case and should therefore be dismissed. *See id.* (affirming the dismissal of a claim because it was duplicative of a claim in a different case between the same parties).[4]

### Recommendation

The Court recommends that Plaintiff's motion to remand (Doc. 13, No. CV-24-538) be **denied**, and that Defendant's partial motions to dismiss (Doc. 14, No. CV-24-502; Doc. 8, No. CV-24-538) be **granted**. As to the consolidated case (No. CV-24-538), the Court further recommends that Plaintiff's claim of retaliation under Title VII be **dismissed without prejudice** as duplicative.

This recommendation is not immediately appealable to the United States Court of Appeals for the Ninth Circuit. The parties have 14 days to file specific written objections with the district court. Fed. R. Civ. P. 72(b)(2). The parties have 14 days to file responses to objections. *Id.* The parties may not file replies on objections absent the district court's permission. A failure to file timely objections may result in the waiver of de novo review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 30th day of January, 2025.

_____
Honorable Maria S. Aguilera
United States Magistrate Judge

---

[4] If the sole federal-law claim is dismissed from the consolidated case, the Court will have discretion to exercise supplemental jurisdiction over the remaining state-law claims. *See Osborn v. Haley*, 549 U.S. 225, 245 (2007) ("Even if only state-law claims remained after resolution of the federal question, the District Court would have discretion, consistent with Article III, to retain jurisdiction."). Such discretion is properly exercised here, given that the consolidated case is based on the same facts as the lead case.